UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 09-101-GWU

DARRELL WAYNE ALLEN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

> impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Darrell Wayne Allen, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of thoracic degenerative disc disease, anxiety, depression, and a bipolar disorder. (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Allen retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 20-4). The Appeals Council declined to review, and this action followed.

Although the plaintiff alleged disability due to anxiety attacks, suicidal tendencies, severe bipolar disorder, and back pain (Tr. 78), and he submitted voluminous medical records, his argument on appeal focuses exclusively on the adequacy of the hypothetical question presented to the VE and certain aspects of the VE's testimony.

The ALJ stated in his decision that the evidence supported a finding that Mr. Allen could perform work at the medium, light, and sedentary levels with the following non-exertional limitations.  He: (1) should avoid even moderate exposure to danger such as unprotected heights and moving machinery and temperature extremes; (2) could understand, remember, and carry out simple tasks and

instructions in the performance of routine, low stress, object-oriented work; and (3) was limited to only occasional interaction with the general public. (Tr. 20).

The format of the ALJ's questioning of the VE does not make it absolutely clear that all of the non-exertional factors were considered. The ALJ started his questioning by asking the VE to consider an individual of the plaintiff's age, education and work experience with the capacity to perform medium, light, and sedentary exertion, and who could perform only low stress work. (Tr. 780). He then digressed to ask the VE's definition of low stress work. The VE responded that her definition was that there would not be "a lot of multi-tasking involved" and the person would have supervision. (Id.). The ALJ then asked: (1) about the effect of employment exposing a worker to danger such as unprotected heights or moving or dangerous machinery or equipment; (2) the effect of loud noises, humid temperatures, and not working in a temperature-controlled work site; and (3) the effect of interacting with the public. (Tr. 780-1). The VE responded to all of these questions that they could cause more stress for an unskilled worker. (Id.).

Only after receiving these answers did the ALJ present his specific hypothetical question, which was:

> Q. Considering the age, education, and work experience of Darrell Allen, and that he hypothetically has a residual functional capacity for work at the medium, light or sedentary exertional levels and his ability to work is restricted to only lower stress, or low stress-type unskilled jobs, do any jobs exist in the nation that such a worker could perform?
>
> (Tr. 781-2).

To this specific question, the VE responded that the plaintiff could perform the jobs of bagger/cart pusher, with 3,000 jobs in Kentucky and 165,000 nationally, janitor/cleaner, with 19,000 jobs in Kentucky and 1,570,000 nationally and light commercial cleaner, with 8,000 jobs in Kentucky and 689,000 nationally. (Tr. 782). The VE also testified that her opinions were consistent with the Dictionary of Occupational Titles (DOT), taking into account that the DOT was "somewhat obsolete and is very inclusive in its definitions." (Tr. 782-3).

While it is not entirely clear to a reviewer whether the VE was considering all of the restrictions eventually found by the ALJ such as exposure to unprotected heights and moving machinery, temperature extremes, and interaction with the general public, any error was harmless, since the restrictions were essentially gratuitous. No treating, examining, or non-examining physician placed any physical restrictions on the plaintiff.[1] Accordingly, a remand to clarify this portion of the hypothetical question would be of no help to the plaintiff.

Regarding the mental restrictions, the plaintiff makes three specific arguments. He notes that the VE had testified that exposure to loud noises could cause additional stress (Tr. 783) and cites sections of the DOT for the jobs of

---

[1] Non-examining state agency physicians Timothy Gregg and Allen Dawson reviewed a portion of the record and did not find any evidence of a "severe" physical impairment. (Tr. 407, 409). These were the only physicians who discussed physical limitations. The ALJ ultimately chose to give their opinions little weight because of new evidence received after they prepared their assessments (Tr. 22), but this new evidence did not include any indication of permanent physical restrictions.

housekeeping/cleaner and bagger which indicate that these positions have a noise intensity level of 3, or "moderate." See DOT §§ 323.687-014 (cleaner, housekeeping); 920.687-014 (bagger). However, even assuming for the sake of argument that the evidence establishes that the plaintiff cannot be exposed to loud noises, the Sixth Circuit has held that the ALJ is entitled to accept the opinion of a VE over that of the DOT. Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (1995); 20 C.F.R. § 404.1566(e).

The plaintiff also argues that "common sense" indicates that a person who bags groceries would have more than occasional interaction with the public, and speculates that a housekeeper might be required to render personal assistance to patrons. In making these arguments, the plaintiff abandons the DOT, which indicates that neither of the jobs requires a significant amount of "dealing with people." In addition to finding no support in the DOT, the plaintiff's arguments are contradicted by the VE's specific testimony that the job of bagger was object-focused and only required superficial interaction with others and that at least 60 percent of the jobs she had cited in response to the ALJ's hypothetical would be available, and also that in her opinion the plaintiff would be able to do the housekeeping/cleaning job. (Tr. 785). Accordingly, none of the plaintiff's contentions has merit.

Finally, it should be noted that one of the plaintiff's counselors, whose name and qualifications are illegible, submitted a mental medical assessment form

indicating that Mr. Allen had poor or no ability to relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, and understand, remember, and carry out detailed but not complex job instructions. He would have a "seriously limited but not precluded" ability to follow work rules, understand, remember, and carry out simple job instructions, and maintain personal appearance. (Tr. 448-50). The plaintiff's representative at the hearing presented these limitations to the VE. (Tr. 784-5). She still testified that he could perform the jobs of bagger and housekeeper. (Id.). Therefore, even if the restrictions given by this source were entitled to controlling weight, the VE identified a sufficient number of jobs which the plaintiff could perform.

The decision will be affirmed.

This the 10th day of May, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**